LAW OFFICE OF

# KEVIN J. KEATING

SUITE 501

666 OLD COUNTRY ROAD

GARDEN CITY, NEW YORK 11530-2004

(516) 222-1099

—

TELECOPIER
(516) 683-8410

KEVIN J. KEATING

—

SANDRA McILVEEN

MANHATTAN OFFICE:
EMPIRE STATE BUILDING
350 FIFTH AVENUE, SUITE 5411
NEW YORK, N.Y. 10118-0110
(212) 964-2702

June 26, 2002

Honorable Abbey L. Boklan
County Court Judge
Nassau County Court
262 Old Country Road
Mineola, NY  11501

        Re:     <u>People v. Demetrius Hill</u>
                   Indictment No. 901N-2002

Dear Judge Boklan:

In accordance with my conversation with Ms. Cruise on June 24, 2002, please be advised that I have been retained by Demetrius Hill in the captioned matter and, accordingly, will be substituting for prior counsel Louis Milone.

Accordingly, please consider this letter my entry of a Notice of Appearance on Mr. Hill's behalf.

I will appear on the next scheduled date of July 16, 2002.

Thank you for your consideration.

                Very truly yours,

                KEVIN J. KEATING

KJK:jv

# United States District Court

*Eastern* _____ **DISTRICT OF** *New York*

*United States of America*

**v.**

*Demetrius Hill*

**SUBPOENA IN A CRIMINAL CASE**

CASE NUMBER:

TO: *Almee L. Collin*
*2604 Pine Hill Gardens*
*Pine Hill, NJ 08201*

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE *United States District Courthouse* *Eastern District of New York* *100 Federal Plaza* *Central Islip, New York 11722-4438* | COURTROOM *Hon. Denis R Hurl.* |
| --- | --- |
| | DATE AND TIME *Feb. 2, 2005, 10am* |

☑ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):
*You are requested to appear to testify on behalf of Demetrius Hill on the aforementioned date in the above matter.*

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT **ROBERT C. HEINEMANN** | DATE *1/5/05* |
| --- | --- |
| BY DEPUTY CLERK | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER
*SUSAN G. KELLMAN, ESQ* (718) 783 8200
*25 8th Ave*
*Brooklyn, NY 11217*

# United States District Court

Eastern ——— **DISTRICT OF** New York

United States of America

V.

Demetrius Hill

**SUBPOENA IN A CRIMINAL CASE**

CASE NUMBER: O2 Cr. O728 (D)x

TO: Ada Patricia Skilling
206 Hobart Drive
Clemont, NJ 08021

☑ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE United States District Court House | COURTROOM |
|---|---|
| Eastern District Of New York | Hon. Dennis R. Hurley |
| 100 Federal Plaza | DATE AND TIME |
| Central Islip, New York 11722-4438 | Feb. 2, 2005 @ 10 AM |

☑ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

You are requested to testify on behalf of Demetrius Hill on the aforementioned date in the above matter.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| **ROBERT C. HEINEMANN** | 1/5/05 |
| BY DEPUTY CLERK | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER
Susan G. Kellman, Esq.
25 8th Avenue
Brooklyn, NY 11217
(718) 783 8200

AO 89 (Rev. 7/95) Subpoena in a Criminal Case

# United States District Court

_Eastern_ **DISTRICT OF** _New York_

_United States of America_

**v.**

_Demetrius Hill_

**SUBPOENA IN A CRIMINAL CASE**

CASE NUMBER: _02 Cr. 0728 ₡_

TO: _Michael Zeane Skilling_
_206 Hobart Drive_
_Clement, NJ 08021_

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE _United States District Courthouse_ _Eastern District of New York_ _100 Federal Plaza_ _Central Islip, New York 11722-4438_ | COURTROOM _Hon. Denis R. Hurley_ |
| | DATE AND TIME _Feb. 2, 2005, 10 am_ |

☑ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):
_You are requested to testify on behalf of Demetrius Hill on the aforementioned date in the above matter._

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT **ROBERT C. HEINEMANN** | DATE _1/5/05_ |
| BY DEPUTY CLERK _[signature]_ | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER
_Susan G. Kellman, Esq._
_25 8th Avenue  (718) 783-8200_

**Susan Kellman, Esq.**
**718 783-8200**

January 14, 2005

Justin Lillian
Legal Department
Metropolitan Detention Center
100 29th Street
Brooklyn, NY 11232
**By Facsimile**
**718 840-4250**

Re: U.S. v. Demetrius Hill Inmate No. 68133-053

Dear Mr. Lillian:

I am the attorney advisor for pro se defendant Demetrious Hill Inmate No. 68133-053. My investigator, Rodney Jones, pursuant to a court order previously provided, will be accompanying prospective witness Amanda Coates into the MDC to speak with Mr. Hill. interviewing him on Monday, January 17, 2005.

Please contact me to confirm that there is no impediment to this meeting.

Thank you for your cooperation.

Very truly yours,

Susan Kellman





**Mr. Demetrius Hill**
**Inmate # 68133-53**
**Metropolitan Detention Center**
**80 29th Street**
**Brooklyn, New York 11232**

Law Offices of
e G. Kellman
Attorney at Law
25 8th Avenue
m, New York 11217

*Law Offices of*
## Susan G. Kellman
*Attorney at Law*

25 8th Avenue
Brooklyn, New York 11217

Telephone: (718) 783-8200
Telecopier: (718) 783-8226
e-mail: kellman.esq@aol.com

January 6, 2004

Mr. Demetrius Hill
Inmate # 68133-053
Metropolitan Detention Center
80 29th Street
Brooklyn, New York 11232

**Re: Replacement Tape**

Dear Demetrius,

Enclosed is a replacement tape for November 14, 2004. Please confirm receipt of this tape so that I can cross it off of my list.

I played phone tag with Rodney today, so I don't yet know how he is doing with the witnesses...will keep trying.

Very truly yours,

Susan G. Kellman

*Law Offices of*
## Susan G. Kellman
*Attorney at Law*

25 8th Avenue
Brooklyn, New York 11217

Telephone: (718) 783-8200
Telecopier: (718) 783-8226
e-mail: kellmanesq@aol.com

January 7, 2004

Richard Donoghue, Esq.
Assistant United States Attorney
Eastern District of New York
610 Federal Plaza
Center Islip, New York 11722

**Re: <u>United States v. Demetrius Hill</u>
(S-3) 02 Cr. 728 (DRH)**

Dear Mr. Donoghue:

I write to express Mr. Hill's concerns regarding two important matters in connection with the upcoming trial of the above-referenced matter.

First, as of this date, Mr. Hill has not yet received an operable tape player. He reports that he has received a tape player without batteries on one occasion and without headphone on a second occasion. Without a tape player he is unable to adequately prepare for trial since he needs to review the taped conversations overheard at the MDC and the Passaic County Jail and provided by your office.

As of this date, neither Mr. Tritz, Mr. Hill nor myself have received any transcripts of these conversations. Is it the government's intention to use any of these conversations? And, if so, when can we anticipate receiving transcripts?

Finally, in my discovery letter of December 21, 2004, I requested, at Mr. Hill's request, the specific dates and times of the specific robberies charged in the superceding indictment. Without this information it is impossible to determine whether Mr. Hill can assert alibi testimony. Please advise.

Thank you for providing the tape of November 14 and for your continued cooperation.

Very truly yours,

Susan G. Kellman

cc: Demetrius Hill

*Susan G. Kellman*
*Attorney at Law*
*25 Eighth Avenue*
*Brooklyn, New York 11217*
*(718) 783-8200*

January 20, 2005

Mr. Demetrius Hill
Inmate # 68133-053
Metropolitan Detention Center
80 29th Street
Brooklyn, New York 11232

**Re: Conspiracy Research**

Dear Demetrius,

Here is the research you wanted.  No reason to print <u>Krulewitch</u> – this is horn book law – there is no question that "knowledge" is an essential element of conspiracy – moreover, "mere presence" and/or "mere association" and/or "presence together with association" – even at the scene of a crime...without evidence of "knowing" participation...and in the case of a conspiracy... "knowing" involvement, as exemplified by discussions, etc. – not sufficient to make out conspiracy.

Spoke to Keating...was hoping he might be able to shed some light...not much help. Please make a chart for me of which witnesses you intend to call and what you anticipate each witness will say. Thanks, see you Monday.

Very truly yours,

Susan G. Kellman

February 7, 2005

**BY HAND**
Hon. Denis R. Hurley
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: <u>United States v. Demetrius Hill</u>
S-3 02 Cr. 728 (DRH)

Dear Judge Hurley:

Since I have been representing myself I have been repeatedly denied any effective
assistance from the Court. I find it hard to comprehend how the Court can "order" the BOP to
use any force necessary to get me to Court (when I never refused and was told court was canceled
due to snow) but can only issue a "recommendation" to the BOP that I use the law library, which
I have **not** been allowed to use once since I arrived at the MDC. I have also been denied access
to batteries to use the walkman, that the institution took three weeks to provide. So I have not
been able to listen to the tapes the government has turned over. My standby counsel was away
for a week before trial during which time I was forced to give a DNA sample without consulting
with Ms. Kellman. The conditions of my confinement here at MDC, in the Special Housing Unit
(SHU) has made it impossible to prepare a proper and meticulous defense for trial. I attempted
to appeal these conditions to the Second Circuit and that was denied "because I was no longer in
the MDC." Now I am back at the MDC and the conditions have become worse without any
redress from the Court.

Because the conditions at the MDC have made it impossible for me to continue to
proceed pro se, I request that the Court permit Ms. Kellman to take over as my attorney, effective
immediately and that I be fully cognizant and abreast of all fundamental decisions according to
the United States Constitution.

Respectfully submitted,

Demetrius Hill

cc:    Susan G. Kellman

       Richard Donoghue, AUSA

# PERINI & HOERGER

### ATTORNEYS AT LAW
### 1770 MOTOR PARKWAY
### SUITE 300
### HAUPPAUGE, NEW YORK 11749

RAYMOND G. PERINI
MAUREEN S. HOERGER

WAYNE J. DONOVAN

(631) 232-2224
FAX (631) 232-2344

September 29, 2003

Honorable Denis R. Hurley
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**Re:   United States v. Demetrius Hill
        Docket No. 02-CR-728 (DRH)**

Dear Judge Hurley:

At the Court's request I visited Mr. Hill at the Metropolitan Detention Center's Special Housing Unit on Friday to discuss with him the competency report and the issue of whether to have a hearing or waive it, as part of the process of determining whether he can proceed pro se.

In doing so, we discussed a general overview of his two cases, the various legal issues involved and some of the requirements for trial preparation.  I found that Mr. Hill was, as the doctor's report indicated, intelligent, conversant with the nature of the charges against him and firmly grounded in reality.  After our discussion, it was determined that he would not contest the findings of the report when he appears in Court next.

I also discussed with him the advisability of at least accepting the services of a legal advisor, if not legal representation.  It appears that Mr. Hill's primary motivation in appearing pro se is that he does not feel he has adequate time to consult with counsel about crucial stages of his case.  He claimed to have only one counsel visit in his entire 20 months of incarceration, and that all preparation so far has had to be done during limited phone calls and in the lockup.

It is clear that Mr. Hill has a non-frivolous defense to both cases, which are essentially unrelated, and that he requires assistance in preparing for trial. There are a number of sophisticated legal issues, such as the use of the proffer statement which he will need assistance in addressing.  Despite the fact that he is fairly conversant with a great deal of case law, this is a particularly difficult issue.

Honorable Denis R. Hurley
September 29, 2003
Page Two


In addition, the second trial, which revolves around an event that took place at the Metropolitan Detention Center in Brooklyn, is a circumstantial case which will involve the interviewing of a substantial number of witnesses--perhaps as many as eight or ten--all of whom work in Brooklyn or Manhattan. Mr. Hill will not be able to do that from the Special Housing Unit and he makes a legitimate point that events such as the tape recording of his primary defense witness by the government during one of his phone calls, is likely to have a chilling effect on witnesses coming forward to assist him. Therefore, someone outside the institution is going to have to conduct these interviews and attempt to secure testimony for him.

Mr. Hill would have been willing to accept my services as a legal advisor; however, it is just not practical for someone from Eastern Long Island to undertake representing him in this matter given that he cannot be moved closer to the Courthouse. Even on the eve of the recent holidays, it took me 4½ hours just to travel to see Mr. Hill and return. Normally it takes at least 5 hours. His case, I would estimate, will take about 15 to 20 hours of jail visits to prepare, in addition to preparation of motions and interviewing witnesses. A practical solution would be to appoint an attorney from the Brooklyn panel who would not have to sacrifice an entire day's work for each visit and who would be located near the witnesses. Mr. Hill might even eventually agree to accept counsel's legal services if he were able to develop a rapport with the lawyer.

I have discussed the advisability of the application for a legal advisor with Mr. Hill and he has requested that I make it on his behalf, in the event that the Court finds that he can proceed pro se.

Sincerely,

**PERINI & HOERGER**

Maureen S. Hoerger /ca

Maureen S. Hoerger

cc:  AUSA Richard Donoghue
     Demetrius Hill

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

       -against-

DEMETRIUS HILL a/k/a
DEMETRIUS CAPONE a/k/a
MEECHIE HILL,

              Defendant.
------------------------------X

                    ORDER
          02-CR-0728(DRH)(ETB)

A P P E A R A N C E S:

For the Government:
    Roslynn R. Mauskopf
    United States Attorney
    Eastern District of New York
    Alfonse M. D'Amato Federal Courthouse
    Federal Plaza
    Central Islip, New York 11722
      By: Richard P. Donoghue, A.U.S.A.

For Defendant:
    Susan G. Kellman, Esq.
    25 8th Avenue
    Brooklyn, New York 11217

HURLEY, District Judge

        Demetrius Hill ("Hill") was convicted of various crimes

on February 16, 2005.  To date, he remains unsentenced.

        At defense counsel's request, arrangements were made to

transfer defendant from USP Lewisberg to a nearby detention

center to facilitate client/counsel meetings preparatory to

sentence.

        On October 17, 2005, the Court held a status conference

following defendant's return to this jurisdiction.  At that

conference, a post-trial briefing schedule was established.

Under that schedule, any defense motions were to be filed by

December 1, 2005, with the government's response being due on

December 5th, and any response by the movant being due by

December 14th.  Also at the October 17, 2005 status conference, a sentencing date of January 27, 2006 was scheduled.

No defense motions were received by the December 1, 2005 date.  Rather, defense counsel sent a letter to the Court dated December 18, 2005 asking the Court "to use [the] January 27, 2006 sentencing date for a status conference."  (Def.'s Dec. 18, 2005 Letter at 1.)  Counsel advised that at that time she would be in a better position to advise the Court "regarding the progress of my work with Mr. Hill."  By letter endorsement dated December 19, 2005, that application was denied and both parties were directed "to be ready to proceed to sentence on January 27, 2006, as scheduled." (See Letter Endorsement of Dec. 19, 2005 to Defense Counsel's Letter of Dec. 13, 2005.)

Defense counsel by letter dated January 23, 2005 (sic; should read 2006), requested the Court to revisit its earlier ruling denying an adjournment of the sentencing date, proffering that:

> Up to and including this week, counsel has been involved in a civil trial which has consumed a great deal of counsel's time.  Mr. Hill has asked counsel to explore a great many issues and I have been unable to . . . review [the] cases provided by Mr. Hill.  In addition, Mr. Hill and I have not had an adequate opportunity to review the PreSentence Investigation Report.  To the extent that I will be on trial on Tuesday, Wednesday and Thursday of this week, it will be impossible to complete the necessary work preparatory to Mr. Hill's sentence.
>
> Accordingly, I respectfully request that the Court grant counsel a modest adjournment of one month.

-2-

(Def.'s Jan. 23, 2006 Letter.)

Although the Court is underwhelmed by the nature and timing of the current request, circumstances — including the fact that defense counsel reports that she has not yet appropriately "review[ed] the PreSentence Investigation Report" with Hill, and will be on trial through Thursday of this week — essentially requires that the requested relief be granted.  For that reason, it is.  The government, defense counsel, and Hill shall be present on January 27, 2006 at 11:00 a.m. so the necessary steps may be taken to assure that the sentencing will occur on February 27, 2006 (beginning at 10:30 a.m.), i.e. the date requested by defense counsel.

SO ORDERED.

Dated: January 24, 2006
       Central Islip, New York

_____
DENIS R. HURLEY, U.S.D.J.

Summation - Kellman

1195

1 they never followed up again.
2 But what did she do between the time that she
3 met with my client and the time that she made a
determination not to get involved in helping him with his
5 own defense. She went and met with her brother Omar who
6 was already meeting with the government, who had already
7 entered a plea of guilty. Fair? The way that you'd like
8 to have the evidence presented to you? In an important
9 matter of your own lives. Does her inclination to point a
10 finger at him on direct examination, to call him a liar,
11 to say that he wanted me to lie sit well with you after
12 you heard her cross-examination, after you heard the
13 admissions that she made and after you learned that she
14 met with her brother who is cooperating with the
15 government and never disclosed that to Hill?
16 She's not an accomplice witness, members of the
17 jury, because there's no allegation that she was involved
18 in these crimes. But nobody could say that Naomi Eutsey
19 didn't have a motive to perhaps be a little more strenuous
20 in her direct examination than was really appropriate or
21 for that matter truthful, because on cross-examination I
22 submit to you you heard a very different witness and very
23 different testimony.
24 As to the accomplices, you can conclude and the
25 Court will instruct you that these witnesses have a motive

Perry Auerbach, RPR, CSR
Official Court Reporter

Summation - Kellman

1196

1 to testify falsely. A motive to testify falsely. And
2 therefore, their testimony has to be examined with caution
3 and great care. And I submit to you, members of the jury,
4 that there wasn't a single accomplice witness who
5 testified in this case that is worthy of belief. There
6 wasn't a single witness who testified in this case, and by
7 that I mean accomplice witness, who testified in this case
8 upon whom you would rely in an important matter of your
9 own life before you acted.
10 That brings us to Cynthia Plummer, who is of
11 course not charged here as an accomplice witness and the
12 government said sort of a defendant in this case because
13 she's charged in this case and she's not charged in this
14 case. She's not charged in this case at all, members of
15 the jury. She's charged with making false statements, and
16 I submit to you, members of the jury, that those false
17 statements are statements the government has decided are
18 false because they're not consistent with what the garbage
19 that they presented which had to say.
20 The reality is, members of the jury, if you hear
21 her voice on that tape, the ten seconds that the
22 government made out of hours and hours and hours and
hours, you heard the testimony 300 minutes a month for
24 three years and you got to hear two 15-second segments is
25 all the government shared with you, they have the burden,

Perry Auerbach, RPR, CSR
Official Court Reporter

Summation - Kellman

1197

1 not the defendant, and you heard two people who are
2 frustrated, angry, confused, but clearly connected to each
3 other. You hear her anger, which is, I told you to stop
4 running in the streets, and he says I wasn't running, I
5 wasn't running. You had a gun, I didn't have a gun, I had
6 a BB gun. You weren't supposed to be out there. I
7 screwed up, he says.
8 Is this proof of his guilt in this case? It
9 wasn't until Cynthia Plummer was arrested in this case,
10 arrested, for making false statements that she began to
11 say the kinds of things that the government wanted to
12 hear.
13 (Continued on the next page.)

Perry Auerbach, RPR, CSR
Official Court Reporter

Summation - Kellman

1198

1 And I submit to you, members of the jury, that
2 there is a story I used to read my kids, Green Eggs and
3 Ham. Dr. Suess's Green Eggs and Ham. There is a
4 character Sam I Am. And Sam I Am says, you know, I think
5 you should try these green eggs and ham, they are real,
6 real good.
7 You know what, I don't really like green eggs
8 and ham.
9 No, you have to try it in the house, try it with
10 a mouse, try it with a fox, try it with a box. And you
11 know, see what happens, and you keep saying I don't like
12 it in a box, with a mouse, and I don't like it with a fox.
13 It goes on and on and on.
14 In the end Sam tries the eggs, and Sam doesn't
15 say, hey, these are great, uh-uh. Sam says exactly what
16 has been told. Sam says, oh, I like them in the house, I
17 like them with a mouse, I like them with a box, I like
18 them with a fox.
19 He says exactly what he has heard. And this is
20 a young woman, a police officer, corrections officer, and
21 she says, why? She says they came to my job, they asked
22 me questions, they humiliated me, they embarrassed me, and
23 I didn't give them the answers they want. And I was
24 scared.
25 Did they leave her alone? No.

HARRY RAPAPORT, CSR CP CM
OFFICIAL COURT REPORTER

15

be merit to it. I haven't read the motion papers, but it's somewhat unusual. It doesn't mean it isn't well-founded. I never had -- when I sat in Brooklyn, I never had a motion to transfer it out here or vice versa since I've been out here, since I've been out in Central Islip or Hauppauge previously. I haven't had a motion akin to the one you're mentioning.

Of course, there are a lot of civil cases. Change of venue, I think, under 1404 and I think most of those are typically at least unsuccessful when you're talking about a distance of 40 miles. There can be extenuating circumstances, and I acknowledge that. I do appreciate you giving me more insight into the nature of the change of venue motion.

MR. TRITZ: Let me say this, Judge. In the months that I've known Mr. Hill, when I first went to see him at the MDC, it was a bit of a circus.

They would drag him out shackled to bring him 30 yards. They would bring him out shackled, hands and feet, waist chains on video cameras held up to videotape, the transition of the 30 yards to a glass enclosed room where I would meet with him.

Candidly, he did not treat the correction officers with very much respect and it was a very difficult situation.

16

Since he's been in the MCC, there's been a change. He understands that if he wants the privilege of meeting with counsel in the counsel visiting area, he has to conduct himself in an appropriate way and he appears to have endeavored to have done that. He doesn't have the problems that he had before. Indeed, there use to be -- I think they call them shots -- filed against him on a regular basis because of his conduct. That really has stopped.

He has produced four motions that are very substantially, I believe, are well-founded and well written and he has done this all while being in the special housing unit.

He lives in a cage. He has not had family visits in more than a year. He has not had family telephone calls for the same period of time. And, yet, he has concentrated on his material.

Now, maybe we suffer from the problem that he has little else to concentrate on than this case and that this case is -- his whole being is focused on this case and given the opportunity he would have his team in that institution seven days a week, weekends included, working on his case. I have never seen a client who is more dedicated to his defense than Mr. Hill is.

Now, while it is a pain in the neck to me, I

17

must admit I'm not thrilled about it but I can't condemn him for it.  He has worked diligently and been productive under the most adverse conditions and not getting any support from the institution to the point where --

THE COURT:  Is that a fair statement, do you think?

MR. TRITZ:  I think it is, to the point I'm going to make.

Certainly, look, the warden came and saw him and said to him; Mr. Hill, you straightened out, we will see what we can do.  The next thing, he straightens out and he's downstairs in the counsel room.  He got moved out of the 10th floor where they keep the trade center bomber type people and he's down in 9C, which is the special housing unit where they keep the problem people but not the people that are completely segregated.

THE COURT:  I think the record would incorporate all the correspondence and all, but we do know that the correctional facility, for a period of time, certainly endeavored to accommodate both this Court and Mr. Hill.

And we know that because we have been told he was on the phone three hours a day.  We also know that Ms. Playter spent five, six hours with him almost daily for a period of time.

It doesn't sound like they had him locked up in

*Law Offices of*
*Susan G. Kellman*
*Attorney at Law*

25 8th Avenue
Brooklyn, New York 11217

Telephone: (718) 783-8200
Telecopier: (718) 783-8226
e-mail: kellmanesq@aol.com

December 13, 2005

**BY ECF and REGULAR MAIL**
Hon. Denis R. Hurley
United States District Judge
Eastern District of New York
934 Federal Plaza
Central Islip, New York 11722-4447

Re: <u>United States v. Demetrius Hill</u>
Docket No. 02 Cr. 728 (DRH)

Dear Judge Hurley:

Earlier today I had an opportunity to visit with Mr. Hill for the first time since his odyssey to Lewisberg Penitentiary began this past summer.

Amazingly, Mr. Hill was in relatively good spirits and was, for the first time in months, able to communicate effectively with counsel. Together we reviewed many of the issues that have been weighing heavily on Mr. Hill's mind. He has asked me to research a number of specific post-trial issues before the Court imposes sentence and I have given him my word that I would follow through. Accordingly, I would ask the Court to use our January 27, 2006 sentencing date for a status conference. At that time I will be in a better position to inform Your Honor regarding the progress of my work with Mr. Hill.

Additionally, Mr. Hill has asked that the Court direct the Bureau of Prison to return him to the Queens Detention Center. I am informed by Mr. Hill that he was removed from the Queens facility – notwithstanding that he had not had a single incident report filed against him. Mr. Hill reports that the atmosphere at the MDC is inhumane. He is shackled every minute of his day. During counsel's visit today, Mr. Hill was shackled – notwithstanding that the visit occurred in a non-contact visiting room. Thus, Mr. Hill was unable to refer to his research or his legal papers. I am informed that Mr. Hill is being kept on "suicide watch." As such, he is not permitted to wear clothing. Rather, he is given an apron which is intended to protect him. The experience is

oppressive and debilitating and depletes his concentration and his spirit. Accordingly, Mr. Hill respectfully requests that the Court direct that Mr. Hill be returned to the Queens Detention Center.

Respectfully submitted,

Susan G. Kellman

cc:    AUSA Richard A. Donoghue
       Demetrius Hill

12-19-05

Both applications by the defense are denied. The government and defendant are directed to be ready to proceed to sentence on January 27, 2006, as scheduled.

So ordered

Denis R Hurley
U.S.D.J.