UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
DEMETRIUS HILL,

             Petitioner,

      -against-

UNITED STATES OF AMERICA,

            Respondent.

------------------------------------------------X

**MEMORANDUM & ORDER**

09-CV-4499 (DRH)
02-CR-0728 (DRH)

**APPEARANCES:**

**For Petitioner:**
Demetrius Hill, Pro Se
Reg. No. 68133-053
Lewisburg Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

**For Respondent:**
Kelly Currie
United States Attorney, Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722
By: Richard P. Donoghue, AUSA

**HURLEY, Senior District Judge:**

      Petitioner Demetrius Hill ("petitioner" or "Hill") moves pursuant to 28 U.S.C.

§ 2255 to vacate, set aside, or correct his sentence arising from a 2005 conviction in

this Court. In his motion Hill contends that his appointed trial and appellate

counsels provided ineffective assistance of counsel in violation of his Sixth

Amendment right. For the reasons set forth below, the petition is denied.

## BACKGROUND

Hill was convicted, following a jury trial, of one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1), one count of conspiring to commit robberies of narcotic traffickers in violation of 18 U.S.C. § 1951(a), and one count of robbery of narcotics traffickers in violation of 18 U.S.C. § 1951(a). His convictions were affirmed by summary order dated May 27, 2008. *United States v. Hill*, 279 Fed. Appx. 90 (2d Cir 2008).

### A.      Hill's Arrest

Pursuant to a tip from a confidential informant, Hill was stopped by officers of the Port Washington Police Department on February 13, 2002, while traveling as a passenger in a vehicle. A search revealed that Hill had a loaded handgun in the pocket of the jacket he was wearing. Hill was then placed under arrest and taken to the Port Washington Police Department. A second passenger in the vehicle, Sarah Guzman, was also found in possession of a firearm and placed under arrest. (Dec. 2, 2002 Tr. at 6-8, 42-46.)

The ensuing investigation revealed that Hill, Guzman, Michael Skillings, Daniel Skillings, and Omar Eutsey and others carried out a series of robberies of drug dealers and others between October 2001 and February 2002 on Long Island and in New Jersey.

### B.      The Trial

Hill's jury trial on an eleven count superseding indictment commenced in February 2005.

At trial, the government presented the testimony of three cooperating defendants (Sarah Guzman, Daniel Skillings, Omar Eutsey) who committed robberies of drug dealers with Hill, a series of law enforcement officers who described seizing the charged firearm from Hill and numerous admissions he made about the firearm and robberies, and an inmate who was housed with Hill and to whom Hill had disclosed detailed information relating to the firearm possession and the robberies. The Government also presented the testimony of Cynthia Plummer. The Government also presented physical evidence, including the firearms seized from Hill and Guzman on February 13, 2002, Hill's personal items seized from a truck used to commit the robberies, business records, including telephone and hotel records corroborating the cooperators, and a recording of a telephone conversation between Plummer and Hill wherein Hill made reference to the fact that he was robbing drug dealers. (Trial Tr. 1144-74.) Detective Mercado, who interviewed Hill following his arrest for firearm possession on February 13, 2002, testified that Hill admitted robbing drug dealers in New York and New Jersey with Michael Skillings and others and stated, "I don't know what you're worried about. All I'm doing is robbing drug dealers." (Trial Tr. 131.) Detective LaVelle, who also interviewed Hill that day, testified that, in describing the activities of his robbery crew, Hill stated, "We only robber drug dealers." (Trial Tr. 114.) Guzman, Skillings, Eutsey and Plummer were each subjected to vigorous cross-examination.

In his own defense, Hill testified that he did not possess the charged firearm and did not commit any robberies with Guzman or the other two co-conspirators who testified against him. He further testified that he did not make any admissions about the firearm or robberies to the various law enforcement officers who testified against him and claimed that virtually all of the Government witnesses were lying. (Trial Tr. 947-1110.) On cross-examination, Hill admitted, *inter alia*, that he had recruited a witness to commit perjury in one of his prior criminal prosecutions.

*(United States v. Hill*, 02-CR-728, Order dated March 4, 2010 [DE 259](quoting

Gov't's Sept. 4, 2007 Letter Br.).)

Hill was convicted on all counts. However, on February 27, 2006, this Court granted a Rule 29 motion for judgment of acquittal on counts 4 through 11 of the superseding indictment; the motion as to count 2 was denied.

## C.    The Sentencing

In June 2006, the Court conducted a *Fatico* hearing to resolve sentencing disputes and determined that the proper advisory Sentencing Guidelines range was 292 -365 months but noted that the guideline range exceeded the statutory maximum with respect to each of the counts.  (June 13, 2006 Tr. 339-41)  The Court sentenced Hill to ten years of incarceration on Count One and twenty years on each of Counts Two and Three, with all sentences running concurrently.  (*Id.* at 370-71.)

## D.    Hill's 2255 Petition

As noted earlier, Hill asserts that he received ineffective assistance of counsel.  Hill's initial petition, timely filed on October 6, 2009, alleges his trial counsel was ineffective because counsel failed  to (1)  allege constructive amendment of indictment based on the two separate and distinct robberies alleged in Count Three; (2) request a jury instruction for Count One which would have allowed the jury to consider that some other person placed the firearm in his coat; (3) call Pastor Skillings to testify during trial; (4) use exculpatory audio tapes at trial, specifically the audio tape of his 2004 conversation with Guzman; (5) object to the government's imputing of their own opinion regarding government witnesses having no reason to lie; (6) challenge two separate and distinct conspiracies during

trial; (7) suppress his post arrest statements; (8) challenge the vindictiveness of the government's request for multiple new enhancements and recalculation as a result of the granting of the Rule 29 motion of acquittal; and (9) request a downward departure. (DE 1 (Petition) at pp. 4-9, 14-15.) Hill asserts that "the cumulative impact of trial counsels [sic] errors" require an evidentiary hearing. Additionally, Hill maintains appellate counsel was ineffective for failing to argue that his speedy trial rights were violated and his sentence was unreasonable in light of the decision in *Gall v. United States*, 552 U.S. 38 (2007). (DE 1 (Petition) at pp. 15-16.)

On March 14, 2014, Hill filed an "amended 2555 adding an additional argument" purportedly "pursuant to Fed. R. Civ. P. Rule 15(c)." (DE 31.) In this filing, Hill argues that "[t]he court lacked jurisdiction to sentence Petitioner predicated upon crimes he was neither indicted for nor charged with via complaint" (*id*. at 5), and "his conviction and sentence constitute a complete denial of due process and a miscarriage of justice" (*id*. at 8.)

Hill filed a "Second Amendment" to his petition on May 8, 2015, "based on newly discovered evidence, e.g. recorded phone calls between Hill and Cynthia Plummer dated 12/4/14 and 2/5/15," (DE 35 at p.1).

## DISCUSSION

In support of his petition, Hill has submitted over 120 pages of briefing, as well as a fair amount of additional material. As Hill is proceeding pro se, the Court shall construe his papers to state the strongest possible arguments they suggest. The Court notes, however, that Hill's briefs are not always the model of clarity. In

addition, sprinkled throughout Hill's papers are unsupported and/or hearsay allegations. *See, e.g.*, Pet.'s Reply (DE 30) at 13 (stating in unsworn brief that Hill has been "repeatedly kept in SHU at Suffolk County Jail (where he was forcibly drugged by prison officials, a fact not in dispute)" and that counsel "was overheard (in court prior to a sentencing hearing) by Magdalena Sanchez in collusion with A.U.S.A. Donoghue . . ."); Exhibit to Pet.'s Reply (DE 30-1 at pp 8-9) (unsigned and unsworn affidavit of Sandra Escalara regarding her willingness to testify on behalf of Hill). Such assertions will not be considered by the Court. *See Haouari v. United States,* 510 F.3d 350, 354 (A 2255 petition "must contain assertions of facts that a petitioner is in a position to establish by competent evidence. Airy generalities, conclusory assertions and hearsay statements will not suffice.) (internal quotations omitted),

Finally, the Court notes that for a significant portion of the criminal proceeding and through jury selection in February 2005, Hill proceeded pro se. After jury selection, Hill asked that Ms. Kellman, who had been serving as his stand-by counsel since December 2004, be permitted to represent him during the trial and that request was granted

## I.       Standard Governing Claims of Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must establish (1) that his counsel performed deficiently, and (2) that the deficiency caused actual

prejudice. *Id.* at 687. *See also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

Under the first prong, "we ask whether counsel's performance was so deficient that,

in light of all the circumstances, the identified acts or omissions were outside the

range of professionally competent assistance." *Gonzalez v. United States*, 722 F.3d

118, 130 (2d Cir. 2013) (internal quotation marks omitted); *accord Harrington v.

Richter*, 562 U.S. 86, 105 (2011) ("[t]he question is whether an attorney's

representation amounted to incompetence under prevailing professional norms, not

whether it deviated from best practices or most common custom.") (internal

quotation marks omitted). A court must "indulge a strong presumption that

counsel's conduct falls within the range of reasonable professional assistance."

*Strickland*, 466 U.S. at 689. To satisfy the prejudice prong, a petitioner must show

that but for the attorney's deficient performance, there is a reasonable probability

that the result would have been different. *Id.* at 694. More is required than a

mere showing "that the errors had some conceivable effect on the outcome of the

proceeding," as "not every error that conceivable could have influenced the outcome

undermines the reliability of the result of the proceeding." *Id.* at 693. "A

reasonable probability is one sufficient to undermine confidence in the outcome of

the trial or appeal." *Dunham*, 313 F.3d at 730. In a sentencing context, an

ineffective assistance claim requires a "demonstrat[ion] that the alleged errors of

his counsel so prejudiced him that but for these errors, the result of his sentencing

hearing would have been different." *United States v. Robinson*, 354 Fed. Appx. 518,

2009 WL 4249851, at *1 (2d Cir. Nov. 30, 2009) (Summary Order).  Also, the Second

Circuit has instructed that a reviewing court should be "highly deferential" to

counsel's performance, because "'[i]t is all too easy for a court, examining counsel's

defense after it has proved unsuccessful, to conclude that a particular act or

omission of counsel was unreasonable.'"  *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d

Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

   Although the test for ineffective assistance of counsel contains two prongs,

the Supreme Court specifically in *Strickland* noted that the federal district courts

need not address both components if a petitioner fails to establish either one.  The

relevant excerpt from that decision reads:

> Although we have discussed the performance component
> of an ineffectiveness claim prior to the prejudice
> component, there is no reason for a court deciding an
> ineffective assistance claim to approach the inquiry in the
> same order or even to address both components of the
> inquiry if the defendant makes an insufficient showing on
> one.  In particular, a court need not determine whether
> counsel's performance was deficient before examining the
> prejudice suffered by the defendant as a result of the
> alleged deficiencies.  The object of an ineffectiveness claim
> is not to grade counsel's performance.  If it is easier to
> dispose of an ineffectiveness claim on the ground of lack of
> sufficient prejudice, which we expect will often be so, that
> course should be followed.

466 U.S. at 697.

   The two *Strickland* requirements are conjunctively stated, meaning that the

failure to establish either is fatal.  As the trial and sentencing judge, I am able to

definitely address the issue of prejudice as discussed *infra.  United States v. Nino*,

878 F.2d 101, 104-05 (3rd Cir. 1989) (second *Strickland* prong not satisfied given that "the district judge who considered the habeas corpus motion also was the sentencing judge to whom any Rule 35(b) motion would have been submitted, and he conclusively stated in his opinion that had a Rule 35(b) motion been submitted to him, he would not have granted it"); *see also Figueroa Almonte v. United States*, 915 F.2d 1556, 1990 WL 151372, at *3 (1st Cir. Sept. 10, 1990) (unpublished decision); *Voytik v. United States*, 778 F.2d 1306, 1310 (8th Cir. 1985); *Rainford v. United States*, 648 F. Supp. 2d 476, 484 (E.D.N.Y. 2009); *Palacios v. United States*, 2009 WL 604597, at *9 (E.D.N.Y. Mar. 4, 2009).

**B.    Hill's Claims Regarding Trial Counsel Do Not Warrant Relief**

1.    The Failure to Argue Constructive Amendment

According to Hill, his counsel should have argued constructive amendment of the indictment because the trial evidence "clearly presents 2 distinct robberies and the indictment in Count III charges one . . . ."  (DE 1-1 (Pet.'s Mem) at p. 25.)  Also, although not specified in his petition, in discussing this claim he maintains that counsel should have made a better argument for acquittal of that count.  These claims are patently frivolous.

"An indictment has been constructively amended when the government's presentation of evidence and the district court's jury instructions combine to 'modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *United States v. Abdallah*, 840 F. Supp. 2d 584, 612

(E.D.N.Y. 2012), *aff'd*, 528 Fed. Appx. 79 (2d Cir. 2013) (quoting *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996)).  No such error will be found when "the defendant was given notice of the *core of criminality* to be proven at trial." *Unites States v. Vilar*, 729 F.3d 62, 90 (2d Cir. 2013) (internal quotation marks omitted).

Count Three of the indictment charged:

> In or about January 2002, within the Eastern District of New York, the defendant DEMETRIUS HILL, also known as 'Demetrius Capone" and "Meechie Hill," together with others knowingly and intentionally obstructed, delayed and affected commerce and the movement of articles and commodities in commerce by the robbery of narcotics traffickers in the vicinity of Albamore Street in Hempstead, New York.

(DE 174 (Superseding Indictment) at p. 2.)

There was no constructive amendment of the indictment because there was no substantial likelihood that the Hill was convicted of an offense other than the offense charged.  At trial, Guzman testified that she and Hill traveled to a location near Albamore Street in Hempstead and seeing several individuals standing around, parked their getaway vehicle a block away and went back to the location. There, Guzman and Hill were approached by one individual "Demetrius grabbed him and I went through the pockets.  While doing that, two other males came and approached, and asked for a specific person again, and that's when I had pulled out my gun and went through the pockets as well."  (Trial Tr. 343-346.)  They took quantities of crack cocaine and marijuana and $200-300 in cash.  According to

Guzman, "Demetrius kept the crack and I took the marijuana. . . . We split [the cash]." (*Id*. at 346.) As the government aptly states "the fact that the first and second/third victims were robbed in seriatim does not support a finding of constructive amendment." (DE 11 (Gov't's Resp.) at 21.

Moreover, even assuming counsel should have made a better argument for acquittal on Count Three, Hill's claim of ineffective assistance must fail. On appeal, the Second Circuit found "the jury had ample basis to support Hill's conviction" on Count Three. *United States v. Hill*, 279 Fed. Appx. 90, 93 (2d Cir. 2008). Accordingly, there can be no prejudice from counsel's failure to make a better argument for acquittal on that count. *Cf. id*. at 95 (concluding Hill could not show prejudice under *Strickland* from counsel's failure to submit a written statement in opposition to the government's request for reconsideration because the Second Circuit had already deemed the court's resolution of the motion for reconsideration correct).

With reference to Count Three, Hill argues in his brief that counsel should have argued that Guzman robbed the second/third victims on her own because Guzman did not specifically describe what Hill was doing while she went through their pockets and that given that the crack cocaine came from these victims, the jury should acquit him of this count as the robbery of victim one was not shown to satisfy the elements of Section 1951. (Pet.'s Mem. at 26-27.) As the government aptly states

It was clear from Guzman's testimony that Hill and

11

Guzman were committing these robberies together, and Hill was charged both as a principal and under an aiding and abetting theory. It would have been absurd to contend that Hill and Guzman robbed the first victim together but that Hill simply wandered off and was not involved in the robbery of the second/third victims, especially in light of Guzman's testimony that the second/third victims became involved "while" she was going through the first victim's pocket and, more importantly, her testimony that it was Hill who kept the crack cocaine stolen in the robbery.

(Gov't's Mem (DE 11) at p. 22). The failure to raise this frivolous argument does not constitute ineffective assistance of counsel.

2. Failure to Request a Jury Instruction Regarding Unknowing and Non-Intentional Possession

Based on his defense that someone must have placed the gun in his coat, Hill asserts his counsel was ineffective for failing to request a jury instruction which would have allowed the jury to consider that some other person placed the firearm in his coat.

In his defense, Hill testified at trial: "Okay, What happened was and I've told this to the police numerous times, whoever told you that the gun was in that pocket put it there, when I hung my coat up in the funeral home someone knew what they were doing." (Trial Tr. 1090.)

Consistent with that testimony and 18 U.S.C. §§ 922 (g)(1) and 924 (a)(2), the jury was charged that in order to convict Hill on Count One, they must find that Hill possessed the firearm knowingly and that he possessed it "purposefully and voluntarily and not by accident or mistake." (Trial Tr. 1255.) Given these

instructions, if the jury believed that someone has placed the firearm in Hill's coat to set him up they would have acquitted him on Count One. There was no need to instruct the jury, as Hill proposes, on the "unknowing and non-intentional possession justification" and therefore counsel's failure to do so was not ineffective assistance. Indeed, instructing the jury as proposed by Hill on "justification" "as a defense to said charge" (Pet.'s Reply at p. 28), would have erroneously placed the burden on Hill to show "justification" rather than on the government to prove Hill knowingly possessed the firearm.

3.    The Failure to Call Pastor Skillings

At the pretrial suppression hearing,[1] Pastor Skillings testified that he did not see the police seize the firearm from Hill during the February 2002 stop. Hill now maintains that the failure to call the Pastor at trial constitutes ineffective assistance on the part of his counsel. However, Hill states that he "has never disputed whether or not there was or was not a firearm in his coat." (Pet. Mem. at p. 27.) Rather, as noted above, his claim - as demonstrated by his trial testimony (as well as statements made repeatedly in his filings on this motion and in his criminal

---

[1] Hill moved to suppress the firearm recovered from his person on February 13, 2002 contending that the tip from the informant did not provide reasonable suspicion necessary to support the stop and that the stop exceeded an investigatory detention and amounted to an arrest not supported by probable cause.

case[2]) - was that the gun was planted by the unidentified confidential informant. Moreover, according to his testimony at the suppression hearing, Pastor Skillings was not in the car with Petitioner. Rather he was in a car ahead about one and a half car lengths in front. (Jan. 24, 2003 Tr. at 6.) He looked in his rear view mirror and saw the "commotion" surrounding the car Hill was riding in, i.e. "cars pulling up, cutting off other cars, cars all different angles in the street, policemen jumping out of the car. . . ., guns being drawn." (*Id*. at 7-8.) There were at least five cars surrounding the vehicle Hill was in." (*Id*. at 9.) Although Pastor Skillings jumped out of his car, turned around and started yelling, an officer turned around, pointed his gun at him and told him to get back in the car. From where he was standing, he did not see anyone remove a firearm from Petitioner. (*Id*. at 12-13.)

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."). Thus, an attorney's decision "whether to call specific witnesses—even ones that might offer exculpatory

---

[2] *See*, *e.g*., Def.'s Br. Challenging Constitutionality of Mandatory Minimum Sentence (DE 234 in 02-CR-728) at p. 2 wherein his pro se submission, Hill states he was arrested on February 13, 2002 and "[o]n that date a .38 caliber revolver was seized from him."

evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000); *see also United States v. Schmidt*, 105 F.3d 82, 83 (2d Cir. 1997) (the decision of whether or not to call a particular witness is a matter of trial strategy which the courts will generally not second guess).

In view of Hill's trial testimony, as well as his admission that he never disputed the gun was seized from his coat, and Pastor Skillings' testimony at the suppression hearing, the decision not to call the Pastor was an appropriate strategic choice and not ineffective assistance of counsel.

      4.     The Failure to Use Audiotape of the 2004 Guzman Conversation

According to Hill, his counsel rendered ineffective assistance by failing to use a November 2004 recording of a conversation between Hill and Guzman during her cross examination of Guzman. According to Hill, during this conversation he "emphatically denied any involvement in any robbery at which time Guzman conceded that Petitioner had not done any robberies with or without her." (DE 1-1 (Pet.'s Mem. in Supp.) at 35.) The transcript, however, tells a different story.

After Guzman was arrested on federal charges, she agreed to cooperate with the government's investigation. As part of that cooperation, Guzman engaged Hill in a recorded conversation while he was being held in the Passaic County Jail in November 2004. During that conversation, Guzman expressed concern about whether Daniel Skillings could be trusted in view of his then recent arrest. Hill reassured her that Daniel was loyal and went on to explain how the government

would be unable to prove a robbery case without cooperating witnesses. He advised Guzman "you don't talk to the police" because "the only way they prove cases is by getting people to flip on one another . . . ." Counseling Guzman, he told her that if she talked to the police she will "dig" herself into a 'hole' and then the "Feds" will tell her to dig herself out she will have to give up someone else. He continued, "[i]f you allow yourself to become subject to this type of shit, all we do is bury each other . . . don't you think if they had a case they would have charged me with robbery. They haven't charged me with robbery. Know why? Because they're waiting for somebody to point me out." The conversation ends, with what could be considered a veiled threat. "Hurt me one shame on you. Hurt me twice shame on me."

Given the foregoing incriminating statements, counsel's strategic decision not to use the audiotape did not constitute ineffective assistance even if some portion of the tape could be considered exculpatory.

5. Failure to Object to His Cross-Examination

Hill next maintains that counsel's failure to object when he was cross-examined about whether other witnesses were lying constituted ineffective assistance. In ruling on Hill's Rule 29 motion, this Court found that while those portions of the government's cross examination constituted plain error, defendant was not prejudiced as the error had no impact on the outcome of the case. (Feb. 27, 2006 Tr. 82-85.) Given the Court's conclusion that errors had no impact on the

16

outcome, Hill cannot satisfy the *Strickland*'s requirement that "but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

6. Failure to Challenge Two/Three[3] Separate Conspiracies

According to Hill, "counsel was ineffective for not challenging three separate distinct conspiracies testified in support of Count II when only one conspiracy is alleged in the indictment." While not entirely clear, Hill appears to contend there was one Guzman-Hill conspiracy to rob narcotics traffickers, a second Daniel and Michael Skillings conspiracy to rob narcotics traffickers and perhaps a third Omar Eutsey - Michael Skillings conspiracy to rob drug traffickers.

Count II charged the following violation of Section 1951(a):

> In or about and between October 2001 and February 13, 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DEMETRIUS HILL, also known as "Demetrius Capone" and "Meechie Hill," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by robbery of narcotics traffickers in Hempstead, New York, Roosevelt, New York, Freeport, New York, Uniondale, New York, and Camden New Jersey.

(DE 174 (Superseding Indictment) at pp. 2-3.)

The trial testimony fully supports one conspiracy. According to Guzman, she

---

[3] Hill's submission variously alleges that there were two or three conspiracies presented during the trial. (*Compare* Pet.'s Mem. (DE 1-1) at p. 43 (three conspiracies) *with id.* at p. 44 and Pet. at p. 14 (two conspiracies).)

and Hill conspired to rob drug dealers in October 2001 and together they proceeded to carry out in excess of twenty robberies on Long Island and New Jersey, (Trial Tr. 334-70, 445) with Michael Skillings, Daniel Skillings, Omar Eutsey and others participating in the conspiracy at various times (*Id*. 498-500; 727-32.) "[A] single conspiracy is not transposed into a multiple one simply by the lapse of time, change in membership, or shifting emphasis in its locale of operations." *United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir. 1979).

As the trial testimony fully supports one conspiracy, counsel was not ineffective for not challenging that there were two or three conspiracies.

Hill's brief also references counsel's failure to challenge venue on Count Two, asserting, without any supporting authority, that "[w]here an actual agreement is the basis of the conspiracy the agreement must be made on a venue charged in the indictment and the government must provide proof and cannot simply rely on an overt act, as to where the conspiracies were supposedly committed." (Pet.'s Mem. at p.44) As a charge of conspiracy is appropriately venued in any jurisdiction in which "an overt act in furtherance of the conspiracy was committed by any of the coconspirators," *United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987), counsel's failure to challenge venue cannot constitute ineffective assistance.

### 7. Failure to Suppress Post-Arrest Statements

Hill's next contention is that counsel was ineffective for failing to move to suppress his post-arrest statements and in support claims he told his counsel "to make a motion to suppress all alleged post arrest statements because [he] had told

Port Washington Police he was represented by counsel and that he wanted to contact his attorney." (Pet.'s Reply (DE 42-1) at p. 33.) According to Hill, "[j]ust as Petitioner instructed she file the motion to suppress any and all evidence allegedly found in the Red Jeep Blazer which she did, Ms. Kellman refused [to file a motion to suppress his statements to the police] stating it wouldn't matter since Petitioner said he made no statements whatsoever." (*Id.*)[4] Hill's claim regarding this alleged conversation with counsel are contained only in his memoranda. (*See id.*; Pet.'s Mem. (DE 1-3) at p.46.) Indeed, while Hill submitted an affidavit as part of his habeas submissions detailing his alleged conversations with counsel regarding particular witnesses he wanted to call (DE 32), tellingly no sworn statement has been submitted regarding the allegation conversation advising counsel he had invoked his right to counsel while in police custody.[5]

Even if, arguendo, counsel should have so moved after the selection of the jury, to suppress the statements, Hill cannot meet the second prong of *Strickland*. Given the overwhelming evidence against Hill, including the testimony of an

[4] Parenthetically, the court notes that the motion to suppress the items in the Red Blazer (attached as an exhibit to the petition) was made prior to trial at Hill's request, at a time when Ms. Kellman was stand-by counsel, and indicates that Hill was copied on that motion. (DE 1-5 at pp. 1-5.) If in fact Hill had discussed a motion to suppress based on the invocation of the right to counsel, upon receiving the motion to suppress directed only to the items in the Red Blazer one would expect that Hill would have raised its absence with the Court; instead, he requested Kellman be appointed to represent him at trial.

[5] As Hill made no sworn statement regarding this alleged conversation with Ms. Kellman as part of his 200 page plus initial submission, that Ms. Kellman does not address this in her affidavit is of no moment.

inmate who was housed with Hill and to whom Hill had disclosed detailed information relating to the robberies and the recording of a telephone conversation between Cynthia Plummer and Hill wherein Hill made reference to the fact that he had been robbing drug dealers, there is no reasonable probability that the result would have been different.

      8.      Failure to Challenge Government's Request for New Enhancements <u>and Recalculation of Guidelines After Granting of Rule 29 Motion</u>

Hill asserts that counsel was ineffective during sentencing "for failing to challenge the vindictiveness of the multiple pre-sentence investigation reports," (Pet.'s Mem at 47). According to Hill, the government's vindictiveness is demonstrated by the fact that the government did not seek certain enhancements until after this Court granted the Rule 29 motion dismissing Counts Four through Eleven.

By way of background, the initial presentence investigation report ("PSI") listed 27 robberies and indicated Hill's mandatory minimum sentence was 107 years due to the consecutive mandatory minimum sentences required under 18 U.S.C. §§ 924(c) and 844 (h) for Counts Six through Eleven. The guideline range for Counts One through Five was calculated at 97 to 121 months based on a total offense level of 29 and a criminal history category of 2. After the government objected that the PSR did not include an enhancement for obstruction of justice, a First Addendum was generated and listed the guideline range for Counts One through Five as 121 to 151 months based on a total offense level of 31 and a

criminal history category of 2. Nonetheless, Hill's mandatory minimum sentence remained 107 years. A Second Addendum addressed objections by the defense, but no changes were made in the guideline calculations. Based on additional information received from the Government and following the Court's dismissal of Counts Four through Eleven pursuant to a Rule 29 motion by Hill, a Third Addendum was filed. The Third Addendum revised the list of offenses to only Counts One through Three, added an additional robbery (#28) and the robberies involved in the offense level computations were limited to only those involving the theft of cocaine base (viz. robberies 17, 22, 26, and 28). Finally, enhancements were added for specific offense characteristics (firearm possession) and role in the offense (organizer of the scheme and use of a minor in commission of the offense). As a result of these changes the guideline range was adjusted to 292 to 365 months; per Guideline 5G1.1(a)[6] the term was limited to 120 months on Count One and 240 months each on Counts Two and Three. Defendant objected to the enhancements and additional robbery and a *Fatico* hearing was held. (*See generally* June 12 & 13, 2006 Tr.) The Court upheld all the enhancements but eliminated the additional robbery. At the Court's request, the guideline was recalculated, taking into account that the total number of units was reduced from 6 ½ to 5 ½. (June 13, 2006 Tr. at 338-39.) The guideline range remained as it was before, 292 to 365 months.

---

[6] Guideline § 5G1.1(a) provides that where the statutory maximum sentence is less than the minimum of the authorized guideline range, the statutory maximum sentence shall be the guideline sentence.

"A vindictive motive will be found where there is direct evidence of actual vindictiveness, or a rebuttable presumption of a vindictive motive may arise under the circumstances." *United States v. King*, 126 F.3d 394, (2d Cir. 1997) (internal quotation marks omitted). "A presumption of vindictiveness arises when the circumstances of the case create a realistic likelihood of prosecutorial vindictiveness." *Johnson v. U.S.*, 2014 WL 4545845, * 10 (E.D.N.Y. Sept. 12, 2014) (quoting *United States v. Johnson*, 171 F.3d 139, 141 (2d Cir. 1999). "The relevant question, therefore is whether there is a 'realistic likelihood' that the Government acted out of a vindictive motivation, rather than a legitimate one." *Id.* "It is not enough for the defendant to establish that a prosecutor acted after the exercise of a right by the defendant. The 'link of vindictiveness cannot be inferred simply because the prosecutor's actions followed the exercise of a right, or because they would not have been taken but for the exercise of a defensive right.' Rather, the appearance of vindictiveness only occurs where, "as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because [she] has exercised [her] specific legal rights." *United States v. Tillman*, 2010 WL 3000189, * 4 (S.D.N.Y. July 30, 2010), *aff'd*, 471 Fed. Appx. 43 (2d Cir. 2012) (quoting *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982) (citing *United States v. Goodwin*, 457 U.S. 368, 380 (1982))).

The decision by Hill's counsel to challenge the factual predict for the

enhancements and forego any claim of vindictiveness was a strategic decision and did not fall below the range of reasonable professional assistance. Moreover, the circumstances of this case do not give rise to a realistic likelihood of prosecutorial vindictiveness and thus Hill's claim also fails to survive *Strickland's* prejudice prong. First, the firearm possession enhancement was not available prior to the granting of the Rule 29 motion because the use of the firearms was previously accounted for in the counts of conviction for 18 U.S.C. § 924(c). The commentary for Guideline § 2K2.4 states that specific offense characteristic for possession of a weapon should not be applied if a sentence is imposed in conjunction with a sentence for the underlying offense. Thus, the Government's request for firearm enhancements does not demonstrate vindictiveness. Moreover, given that prior to the Rule 29 dismissal of Counts Four through Eleven, defendant was facing mandatory minimum sentence was 107 years a decision by the government not to seek enhancements for Hill's role was reasonable. Concomitantly, the decision to seek the enhancements after the Rule 29 decision does not indicate vindictiveness or spitefulness. Rather, given the drastic change in the landscape i.e. the reduction of the statutory minimum sentence from 107 to 0 years, as the Government aptly notes "advisory Sentencing Guidelines calculation took on an entirely different, and vastly more important, role in sentencing proceedings." (Gov't Resp. at 36.) Thus, there was good cause for the Government to seek the enhancements for Hill's leadership role and his use of a minor.

9.    <u>Failure to Request a Downward Departure</u>

Hill also asserts counsel was ineffective for failing to  request a downward departure:  counsel should have argued that his pretrial and presentencing misbehavior stemmed from "SHU Syndrome"[7] and should have asked for a downward departure because of Hill's "extreme conditions of confinement."  (Pet.'s Mem. at 56.)  Preliminarily, the Court notes that in pronouncing sentence it did not discuss Hill's misbehavior while awaiting either trial or sentence.  More importantly, Hill provides no support for the proposition that he suffered from "SHU Syndrome" and thus this ineffective assistance of counsel claim must fail. With respect to requesting a downward departure for his conditions of confinement, "it is true that 'pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures' . . . ." *United States v. Robinson*,  – F.3d –, 2015 WL 5023781 (2d Cir. Aug. 26, 2015).  However, as sentencing judge, fully familiar with Hill's misbehavior while awaiting trial, (*see, e.g.*, Mem. & Order in 02-CR-728, dated Nov. 16, 2004, at p. 14 (noting that the "oppressiveness of Hill's confinement, and any anxiety that it has caused him, are primarily due to his own record of misbehavior at various correctional facilities)), I am confident that there was no prejudice to Hill as I would not have been amenable to such a downward departure.

---

[7] "SHU" refers to Special Housing Unit.

10. <u>Other Arguments Not in Petition but Raised in Hill's Memoranda</u>

Although not listed in the petition itself, Hill asserts in his Memorandum in Support that trial counsel was ineffective "for failing to call the confidential informant to the stand or renewing motion for disclosure of confidential informant." (Pet.'s Mem. (DE 1-1) at p. 39-40.)

In its December 21, 2004 Memorandum and Order, the Court denied a motion by Hill to compel the government to disclose the identity of the informant. In support of that motion, Hill asserted, inter alia, "the possibility that the confidential informant played some active role in framing the defendant." (Dec. 21, 2004 Mem. & Order (DE 180 in 02 CR 728) at 2, 6. Nothing in the present petition provides cause for the Court to reexamine its conclusion that Hill did not demonstrate a need for disclosure. In view of the Court's denial of the motion to disclose the identity of the informant, counsel cannot be faulted for failing "to contact the CI to testify" (Pet.'s Mem. at 40), as counsel would have no way of knowing the informant's identity.

In his reply memorandum, Hill asserts for the first time that "the Court sentenced [him] with the objective that he receives 'rehabilitation' while incarcerated" and that counsel was ineffective for failing "to advise the Court that it cannot impose sentence in order to allow petitioner to 'rehabilitate' while incarcerated." (Pet.'s Reply at p. 39.) The Court's review of the transcript of pronouncement of sentence (June 13, 2006 Tr. at pp. 362-375) reveals the following. The Court addressed each of the 3553 factors it was required to consider, including

the sentencing guidelines, the nature of the offense, and Hill's background. (*Id.* at p. 362-69.) Finding Hill to be a danger to society, the Court considered the reason penal sanctions are employed. "[T]hey include of course to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense. In addition, the court has to consider both general deterrence and specific deterrence." (*Id.* at 368.) Recognizing there is no presumption in favor of the guideline sentence and considering all the factors listed in 18 U.S.C. § 3553(a), the Court stated "a sentence of 20 years represents an appropriate sentence, a reasonable sentence, which is no more onerous than necessary to satisfactorily address the reasons that penal sanctions are employed, and the other considerations that the Court is required to factor into its determination in imposing sentence." (*Id.* at 370.) Not once did the Court mention rehabilitation. Thus Hill's claim that his attorney was ineffective for failing to "advise the Court that it cannot impose sentence in order to allow petitioner to 'rehabilitate' while incarcerated" has no merit.

## C.    Hills Claims Regarding Appellate Counsel Do Not Warrant Relief

### 1.    Failure to Raise Speedy Trial Issues

Hill asserts that his appellate counsel was ineffective for failing to assert that his speedy trial rights were violated "when the Court allowed Petitioner to sign a perspective waiver of his speedy trial rights" (Pet.'s Mem. at 58) and he was "forced" to sign such waivers, (*id.* at 63). Also, counsel should have argued that the Court improperly excluded from the speedy trial clock the time during which Hill's appeal

from the denial of bail was pending (April 24, 2003 to May 5, 2004) and that the speedy trial provisions of the Interstate Agreement on Detainers had been violated.

By way of background, Hill moved to dismiss his indictment on speedy trial grounds by motion dated March 17, 2004 setting forth a total of 157 days which he contended should have been counted against the speedy trial clock. This Court denied the motion reasoning that the entire period of 94 days during which defendant's appeal of his bail status was pending must be excluded, leaving only 63 days that count towards his speedy trial clock. (Mem. & Order in 02-CR-728 dated Nov. 16, 2004, at p. 3-4.)

Hill presently argues that the time during which his interlocutory appeal was pending should not be excluded because it did not result in "delay." Case and statutory law does not support Hill. *See, e.g.*, *United States v. Kirsch*, 54 F.3d 1062, 1071 (2d Cir. 1995) (time during which interlocutory appeals challenging psychiatric examination orders were pending automatically excluded from speedy trial clock despite fact that the district court proceedings were not delayed); *United States v. Davenport*, 935 F.2d 1223, 1230 (11th Cir. 1991) (defendant's appeal of his detention status was an interlocutory appeal which tolls the speedy trial clock under 18 U.S.C. § 3161(h)(1)(E) [now § 3161(h)(1)(C)]). Given that the exclusion of time during the pendency of his appeal was proper, appellate counsel was not ineffective for failing to raise the issue.

Relying on *Zedner v. United States*, 547 U.S. 489 (2006), Hill further contends counsel was ineffective for not arguing that his "prospective" waivers and

the orders of excludable delay entered on June 27, 2002 and September 23, 2002 were invalid. In *Zedner*, the defendant signed "a blanket prospective waiver of his rights under the [Speedy Trial] Act. *Id*. at 492. Several years later he moved to dismiss the indictment on speedy trial grounds. The district court denied the motion based on defendant's waiver of the application of the Speedy Trial Act "for all time." *Id*. at 494. The Supreme Court held, however, that a defendant may not prospectively waive the application of the Speedy Trial Act. "Section 3161(h) specifies in detail numerous categories of delay that are not counted in applying the Act's deadlines. Conspicuously, § 3161(h) has no provision excluding periods of delay during which a defendant waives the application of the Act, and it is apparent from the terms of the Act that this omission was a considered one. Instead of simply allowing defendants to opt out of the Act, the Act demands that defense continuance requests fit within one of the specific exclusions set out in subsection (h)." *Id*. at 500.

     *Zedner* did not hold, as Hill asserts, that a defendant can never prospectively waive specific periods of time under the Speedy Trial Act. Rather, it held that a defendant cannot opt out of the application of the Speedy Trial Act entirely. *Id*. Here, Hill validly agreed in open court to exclude time to allow his counsel time to review discovery and prepare motions and the Court entered orders excluding the specific and limited time periods covered by the waivers.

     In connection with his speedy trial argument, Hill also asserts that his initial

trial counsel "was ineffective for not moving to dismiss the indictment for violation of the [Interstate Agreement on Detainers (the "IAD")]" and that appellate counsel was ineffective for failing to raise violation of the IAD that would have mandated dismissal of the indictment."  (Pet.'s Mem. at p. 65.)  In support, Hill sets forth the following time line:

March until September 2002: held on a state indictment

May 8, 2002: EDNY complaint filed and warrant issued

May 21, 2002: taken from state custody and arraigned and returned to state

June 20, 2002: indicted federally

June 27, 2002: arraigned on federal indictment and then returned to state

Sept. 13, 2002: taken into federal custody for status conference then returned

Sept. 30, 2002 to December 2003 (date acquitted of state charge): repeatedly

     transferred back to state custody then brought back to federal custody

(*See* Pet.'s Mem. at p.66.)

Hill's argument is premised on the mistaken belief that the IAD applied to his pretrial detention.  As the government correctly states:

> The IAD applies only to "a person [who] has entered upon a term of imprisonment in a penal or correctional institution" (Articles III(a) and IV(a)), and is therefore inapplicable to a person, like Hill, who was incarcerated while awaiting trial.  *See United States v. Reed*, 620 F.2d 709, 711-12 (9th Cir. 1980); *United States v. Evans*, 423 F. Supp. 528, 531 (S.D.N.Y. 1976), *aff'd mem.*, 556 F.2d 561 (2d Cir. 1977)  Because Hill was incarcerated while awaiting trial during the time of the alleged violation of the Agreement, his counsel had no legal basis to move this Court for dismissal of the indictment, or to raise the

> issue on direct appeal.  Thus, he does not satisfy
> *Strickland's* first prong.

(Gov't Resp. at 46.)   That appellate counsel did not raise the speedy trial issue on

appeal provides no basis for relief.

2.    The Failure to Argue His Sentence was Unreasonable

Hill's second assertion as to appellate counsel's ineffectiveness is based

on the failure to argue that his sentence was unreasonable in light of the decision in

*Gall v. United States*, 552 U.S. 38 (2007), which according to Hill stands for the

proposition that extraordinary circumstances are not required to justify a sentence

outside the guideline range.  More particularly, Hill argues that appellate counsel

should have "present[ed to the court the multiple abuses situation that Petitioner

had encountered while in pretrial detention," and "the government's inappropriate

actions in enhancing Petitioner's sentence by multiple levels after the Rule 29

motions." (Pet.'s Mem at 68.)

Both these claims are discussed above in the context of trial counsel's

performance and found to provide no basis for relief. That conclusion holds with

respect to appellate counsel.  The evidence in this case indicated that Hill

participated in over a dozen robberies only months after being released from a six

year sentence imposed because he shot a store owner in the head.  He played a

leading role in the robbery crew and there was ample evidence that he is a user of

people as demonstrated by the testimony regarding  Cynthia Plummer and

Guzman.  Moreover, there was ample evidence of Hill's misbehavior while awaiting

trial. Thus, appellate counsel's decision not to seek review of Hill's sentence and to advance what she apparently believed were stronger claims falls within the wide range of reasonable professional assistance.

Finally, given that the standard of review of a sentence is abuse of discretion and the Second Circuit's statement on Hill's appeal of the denial of his release on bail that Hill's "persistent pattern of potentially violent criminal activity, undeterred either by parole supervision or by incarceration, provides clear and convincing evidence of the serious danger presented by Hill's release, " *United States v. Hill*, 97 Fed. Appx. 350 (2d Cir. 2004), Hill cannot meet Strickland's prejudice standard.

### D.    The Claims Raised in the "Amendments"

On March 14, 2014, Hill filed an "Amended/Addendum to Title 28 U.S.C. §2255." (DE 31 (hereinafter "First Amendment").)  In the First Amendment, Hill, asserts that his sentence violates *Alleyne v. United States*, – U.S. –,  133 S. Ct. 2151 (2013) because "the court's judicial fact finding at sentencing constituted de facto jury verdicts of guilty on the uncharged, unindicted 25 robberies and allege [sic] firearm offenses"  (*id.* at p. 3) and that this claim relates back to his original petition (*id.* at p. 2.).

On May 8, 2015, Hill filed a Second Amendment (DE 35) based on "newly discovered evidence" that Cynthia Plummer who testified at trial that she had no deal with the Government other than use immunity "<u>did in fact have a secret deal with AUSA Donoghue and the Nassau County Sheriff's Department at the time she</u>

testified" (*id.* at 3 (emphasis in original)) and the government intentionally lied about the existence of a secret deal in violation of his *Brady and* due process rights..

Neither the First nor the Second Amendment was accompanied by a motion to amend. Nonetheless, the Court must analyze them as motions to amend the petition. A motion to amend a § 2255 motion is analyzed under the standards set forth in Federal Rule of Civil Procedure 15(a). *See Ching v. United States,* 298 F.3d 174, 180 (2d Cir. 2002). Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, a court "may properly deny leave when amendment would be futile." *Jones v. New York State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir. 1999). Additionally, an amendment will relate back to a timely original pleading "when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

1. The First Amendment

The First Amendment is untimely as it cannot relate back to the original petition. The original petition was filed in 2009 whereas *Alleyne* was decided in 2013. A right recognized more than three years after the filing of the petition does not relate back. *Alshalabi v. United States*, 2012 WL 3779226 (E.D.N.Y. Aug. 29, 2012). Moreover, Hill original papers raised only ineffective assistance of counsel claims and neither "set forth" nor "attempted to . . . set forth" within the meaning of Rule 15(c) a claim relating to *Alleyne.* Finally, "as every court to consider the issue

has concluded, the case for *Alleyne's* retroactivity is unpersuasive," *Gil v. United States*, 2015 WL 4617235, *3 (S.D.N.Y. Aug. 3, 2015); *see United States v. Redd*, 735 F.3d 88, 92 (2d Cir. 2013) ("*Alleyne* did not announce new rule of law made retroactive on collateral review), the amendment is not timely under § 2255(f)(3), *Gil*, 2015 WL 4617235, at * 3-4.

In addition, any amendment would be futile as Hill's *Alleyne* claim is without merit. In *Alleyne*, the Court held that any fact that increases mandatory minimum sentence for a crime is an "element" of the crime, not a "sentencing factor" and must be submitted to a jury. Here, the findings made the Court at the *Fatico* hearing related to enhancements under the sentencing guidelines; the findings did not increase the mandatory minimum sentences. *Alleyne* did not overrule *United States v. Booker*, 543 U.S. 220 (2005), which held that a sentencing court may make factual findings that increase a defendant's Sentencing Guidelines, so long as the Guidelines are treated as advisory. Thus, Hill's sentence did not violate *Alleyne*.

2.      The Second Amendment

As noted above, in his Second Amendment, Hill claims "newly discovered evidence" that Cynthia Plummer who testified at trial that she had no deal with the Government other than use immunity did in fact have a secret deal, and the government intentionally lied about this secret deal in violation of his *Brady and* due process rights.

At trial Plummer testified pursuant to a grant of immunity that she was the

defendant's live-in girlfriend during 2001 - 2002, that she saw him in possession of the 38 caliber revolver charged in Count One of the Indictment, that she stayed in a hotel in Camden, New Jersey with the defendant, his co-conspirators, and others in February 2002, and that she heard the defendant and coconspirators bragging about committing various crimes, and that she repeatedly lied to law enforcement authorities to protect the defendant. (Trial Tr. at 304-18, 527-67.)

Based on allegedly recorded telephone conversations between Hill and Plummer on December 4, 2014 and February 5, 2015, neither of which have been provided to the Court,[8] Hill maintains that Plummer told him that "her deal with the Government was done in <u>January/February</u> of 2005, prior to Hill's trial" and she said "YOU [Hill] NEVER HAD A REAL GUN."  (Second Amendment (DE 35) at p. 3 (emphases in original).)[9]

_____

[8] In the Second Amendment, Hill states the recording of the December 4, 2014 conversation between him and Plummer "is attached herewith in CD format." (DE 35 at p.2 n.1)  No such CD was received by the Court and it appears that no such CD was actually sent by Hill as it would not have fit in the letter sized envelope in which the Second Amendment was mailed. By letter filed March 30, 2015, Hill requests that the Court issue a subpoena to the warden of the Jefferson County Jail in Texas for copies of the recordings.  That request is denied.

[9] The Court notes that in 2007, Hill filed a Rule 33 motion seeking a new trial based on "newly discovered evidence."  In relevant part, Hill claimed that "the government had 'a secret deal to dismiss Cynthia Plummer's case in exchange for her testimony . . . implicating him in criminal conduct.' "  (See Order in 02 CR 728 dated March 4, 2010 at p. 14 (quoting Def.'s Mot. ¶ 12).)  The rule 33 motion was denied.  Hill's motion to proceed in forma pauperis on appeal was "DENIED and the appeal [] DISMISSED because it lack an arguable basis in law or fact."  (See 02-CR-728 DE 261 (Second Circuit Mandate).)

Where false testimony is provided with the prosecution's knowledge, a conviction cannot stand if "there was a reasonable likelihood that the testimony affected the judgment of the jury or that it may have had an effect on the outcome of the trial." *Mills v. Scully*, 826 F.2d 1192, 1195 (2d Cir. 1987). Initially, the court must consider whether Hill has demonstrated that Plummer's trial testimony was perjurious.

The Second Circuit has cautioned that "witness recantations 'must be looked upon with the utmost suspicion' " because they (1) upset societal interests in the finality of convictions, (2) often are unreliable and offered for suspect motives, and (3) in many cases simply impeach cumulative evidence rather than undermine the accuracy of a conviction. *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir.2007) (citing *Dobbert v. Wainwright*, 468 U.S. 1231, 1233–34 (1984) (Brennan, J., dissenting from denial of certiorari)). An applicant for relief based on an alleged recantation must submit a specific sworn statement by the witness. A "general, unsworn recantation ... is insufficient to contradict sworn trial testimony." *Haouari*, 510 F.3d at 354.

Here there is no sworn recantation by Plummer. Indeed, Hill has not even provide evidence of an unsworn recantation from Plummer. Hill has thus failed to show that Plummer gave false testimony at trial. The claim in the Second Amendment is therefore denied.

### E. The Request for a Hearing

Finally, Hill's request for a hearing on the claims in his original petition and the First Amendment (DE 33) is denied. No evidentiary hearing is necessary in this action as the combined submissions of the parties provide a sufficient basis to decide the petition. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001); *United States v. Williams*, 2009 WL 1162382, at *3 (S.D.N.Y. 2009). Moreover, where as here, the § 2255 motion is before the same court as the original criminal proceeding, the court "may rely on its own familiarity with the case and deny the motion without a hearing," if the motion lacks "meritorious allegations that can be established by competent evidence." *Stokes v. United States*, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001) (quoting *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990)).

## CONCLUSION

For the reasons set forth above, Hill's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence arising from the 2005 conviction in this Court is denied in its entirety. The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Matthews v. United States*, 682 F. 3d 180, 185 (2d Cir. 2012). The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial of this motion would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v.*

*United States*, 369 U.S. 438, 444-45 91962); *see Feliz v. United States*, 2002 WL 1964347, at *7 (S.D.N.Y.2002).

**SO ORDERED.**

Dated: Central Islip, New York
  October 5, 2015       /s/ Denis R. Hurley
              Denis R. Hurley
              District Judge